UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DEVELDER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>J. HIRSHLER, et al.,<br><br>　　　　　　Defendants. | No. 2:09-cv-1803-TLN-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Defendant Hirshler ("defendant") has filed a motion for summary judgment (ECF No. 65) in which he argues that: (1) plaintiff failed to exhaust his administrative remedies before bringing this suit; (2) he was not deliberately indifferent to plaintiff's serious medical needs; and (3) he is entitled to qualified immunity. Plaintiff has filed an untimely opposition to the motion which the court will, nevertheless, consider. ECF No. 89. For the reasons stated below, defendant's motion should be granted.

**I.　　Background**

Plaintiff alleges that he arrived at Deuel Vocational Institute ("DVI") on or about May 18, 2006. ECF No. 36 at 4. Approximately one month later, plaintiff began experiencing abdominal and urinary pain. *Id.* Medical staff at DVI diagnosed him with bladder calculi on July 17, 2006. *Id.*

Plaintiff claims that, on August 24, 2006, defendant approved a temporary transfer to the University of California Davis Hospital to allow treatment by the urology department at that facility. *Id.* On September 18, 2006, defendant approved a pre-operation surgery appointment for September 28. *Id.* at 4-5. Plaintiff was scheduled for surgery on October 3, 2006. *Id.* at 5. On September 28, 2006, plaintiff was transferred to California State Prison Sacramento and, as a consequence, did not attend either pre-operation appointment scheduled for that day or his October surgery. *Id.* at 5. Plaintiff alleges that defendant orchestrated his transfer because the scheduled surgery was deemed too expensive. *Id.* at 6.

## II. Legal Standards

### A. Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets

1 | its burden with a properly supported motion, the burden then shifts to the opposing party to
2 | present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*,
3 | 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element

/////

3

of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

### B. Administrative Exhaustion

The Prison Litigation Reform Act of 1995 (hereafter "PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal

4

law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA applies to all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), but a prisoner is only required to exhaust those remedies which are "available." *See Booth v. Churner*, 532 U.S. 731, 736 (2001). "To be available, a remedy must be available as a practical matter; it must be capable of use; at hand." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (citing *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005)) (internal quotations omitted).

Dismissal for failure to exhaust should generally be brought and determined by way of a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Id*. at 1168. Under this rubric, the defendant bears the burden of demonstrating that administrative remedies were available and that the plaintiff did not exhaust those remedies. *Id*. at 1172. If defendant carries this burden, then plaintiff must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*.

### C. Deliberate Indifference to Serious Medical Needs

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. Deliberate indifference may be shown by the denial, delay, or intentional interference with medical treatment, or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. A physician need not fail to treat an inmate

altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.*

It is important to differentiate common law negligence claims of malpractice from claims predicated on violations of the Eighth Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). Plaintiff must show a deliberate disregard for a known medical need. The Ninth Circuit has made clear that a difference of medical opinion is, as a matter of law, insufficient to establish deliberate indifference. *See Toguchi*, 391 F.3d at 1058. "Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Finally, a supervisory official may be held liable for deliberate indifference "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right." *Redman v. County of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991) (internal quotations omitted). Section 1983 does not, however, provide for liability under a theory of *respondeat superior*. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). That is, a supervisor may not be held vicariously liable for the misconduct of his or her subordinates.

/////

**III. Analysis**

    **A. Failure to Exhaust**

Defendant argues that plaintiff failed to exhaust his administrative remedies before filing this suit. Plaintiff filed three administrative appeals relevant to the allegations in this suit. For the reasons explained below, the court finds that defendant has failed to carry his burden of establishing that plaintiff failed to exhaust his administrative remedies.

On February 9, 2007 and while incarcerated at CSP-SAC, plaintiff filed an appeal complaining of his bladder issues. ECF No. 65-4 at 26 ¶ 7, 30-32. He complained that, after being transferred to CSP-SAC, he met with "Dr. Duke" and attempted to convince Duke that a urology appointment was necessary. *Id.* at 32. Duke purportedly did not believe plaintiff and put in a referral for consultation – a process which plaintiff had previously completed at DVI. *Id.* The appeal makes no explicit reference to the defendant.

On May 28, 2007, after plaintiff was transferred to Mule Creek State Prison ("MCSP"), he filed another appeal complaining about the medical treatment for his bladder issues. *Id.* at 37 ¶ 7, 40-43. The appeal complained of his medical treatment at MCSP, taking issue with his pain medication dosages, access to medical records, and access to information about his condition. *Id.* at 40-43. Plaintiff makes no reference to the defendant or his care at DVI.

On August 5, 2007, filed a third appeal in which he complained about the conduct of an MCSP transport officer. *Id*. at 38 ¶ 9, 53. Plaintiff alleged that he was transported to University of California Davis for a pre-operation appointment on August 2, 2007. *Id.* at 53. While waiting in the parking lot, one of the transportation officers falsely told him his appointment had been cancelled and returned him to MCSP. *Id.* This appeal makes no mention of defendant or DVI.

At the time plaintiff filed his appeals, the California prison regulations governing administrative appeals required only that inmate grievances "describe the problem and the action requested." *See Sapp v. Kimbrell,* 623 F.3d 813, 824 (9th Cir. 2010); ECF No. 65-6 at 11.[1]

---

[1] Defendant asks the court to take judicial notice of the law and regulations governing inmate appeals through January 28, 2011. ECF No. 65-5 at 2. The court elects to do so. Fed. R. Evid. 201(b) (courts may take judicial notice of information "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2)

Concluding that this language did not specify the requisite level of detail needed to exhaust a claim, the Ninth Circuit adopted a standard previously articulated by the Seventh Circuit, which held that "when a prison's grievance procedures are silent or incomplete as to factual specificity, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). Here, the nature of the wrong was plaintiff's bladder pain which he believed could only be alleviated by surgery. The February 2007 appeal clearly identified this medical issue and requested that "the situation [be] taken care of in a humane time frame." ECF No. 65-4 at 30. Under the *Strong* standard, this was sufficient.

Defendant argues that the appeals in question do not specifically reference him, or the issues underlying this suit. The court disagrees. First, plaintiff was not required to specifically name the defendant in his 2007 appeals. *See Sapp*, 623 F.3d at 824 ("Neither the PLRA itself nor the California regulations require an inmate to identify responsible parties or otherwise to signal who ultimately may be sued."). Second, the February 2007 grievance did note that, while incarcerated at DVI, plaintiff had been led to believe he would have a pre-operation appointment in "the very near future." ECF No. 65-4 at 30-32. The essence of the February grievance was clearly that plaintiff believed he had been made to wait too long for effective treatment. *Id.* The court finds that, liberally construed, this was sufficient to place reviewing officials on notice of the issue underlying this suit– namely the provision of timely specialist treatment for plaintiff's bladder calculi.

The court notes that defendant also argues that each of the appeals is untimely. Plaintiff's February 2007 appeal was not dismissed as untimely, however; it was granted. *Id.* at 34. Other courts in this circuit have found that prison officials waive the right to reject a prisoner's technically deficient grievance where they nevertheless process that grievance. *See Rodenhurst v. State of Hawai'i*, No. 08-00396 SOM-LEK, 2009 U.S. Dist. LEXIS 65921, 2009 WL 2365433, at *5 n.6 (D. Haw. July 30, 2009) (noting that defendants waived their challenges to prisoner's

---

capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

8

technically deficient grievances where they processed those grievances); *Bradley v. Williams*, No. 07-1870 HU, 2009 U.S. Dist. LEXIS 6582, 2009 WL 198014, at *2 (D. Or. Jan. 23, 2009) ("[T]his court finds that defendants waived their right to reject plaintiff's grievance by responding to the defective grievance and then responding to both appeals of the grievance."); *see also Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) ("PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits.").

Based on the foregoing, the court finds that defendant has failed to show that plaintiff did not exhaust his administrative remedies.

### B. Deliberate Indifference

Next, defendant argues that there the evidence shows that he was not deliberately indifferent to plaintiff's serious medical needs. The court agrees.

Evidence submitted by defendant indicates that plaintiff's medical condition was not urgent at the time he was transferred from DVI. The affidavit of Dr. Robert Chapnick opines that, after review of the medical records, plaintiff's urology complaints in September of 2006 "did not rise to the level of an urgency or emergency." ECF No. 65-4 at 17 ¶ 14. Dr. Chapnick notes that, at the time of his transfer, plaintiff's pain was being treated with medications, including phenazopyridine, Tylenol, and Darvocet. *Id.* ¶ 15. Finally, records from a pre-operation visit to the UC Davis department of urology on January 22, 2007 note that plaintiff "is a healthy-appearing man sitting on the exam table in no acute distress." *Id.* at 12. Plaintiff's surgical procedure was tentatively scheduled for March 7, 2007, several weeks from his appointment – another indication that his condition was not an emergency. *Id.* It is well settled that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference . . . [plaintiff] would have had no claim for deliberate medical indifference unless the denial was harmful." *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Additionally, defendant has submitted evidence that he was not responsible for plaintiff's transfer from DVI. In a sworn affidavit, defendant states that he "was never consulted by custody staff prior to Mr. Develder's transfer from DVI to CSP-Sac in 2006. I was not involved in the custody decision whatsoever as to when or where to transfer Mr. Develder from DVI." ECF No.

9

65-4 at 4 ¶ 11. Dr. Chapnick states that DVI is a reception center in the California prison system and that inmates incarcerated there are "evaluated for their placement needs and then transferred by custody officials to another CDCR "mainline" institution to serve their sentence." *Id.* at 15 ¶ 4. Additionally, Chapnick explains that custody transfers from DVI in 2006 were determined by a committee chaired by custody officials, rather than medical staff. *Id.* at 16 ¶ 9. Defendant and Chapnick state that there was no reason to doubt that plaintiff would continue to receive adequate medical care at his transfer facility. *Id.* at 4 ¶ 13, 16 ¶ 11.

Finally, defendant submits that he was not personally involved in approving and overseeing plaintiff's urology appointments at DVI. *Id.* at 3 ¶ 10. Defendant states that his name is printed on the authorizations for plaintiff's outpatient care simply as a consequence of his position as chief medical officer. ECF No. 36 at 11-5. He avers that the signature next to his name on these forms is not his and that it was common practice for the utilization management nurse to sign these forms. ECF No. 64-5 at 5-6 ¶¶ 17-19. Defendant also states that he never personally treated or examined plaintiff. *Id.* ¶ 6.

Plaintiff filed an untimely opposition to defendant's motion for summary judgment (ECF No. 89) and the court, out of an abundance of caution, will consider it. Plaintiff contends that CDCR procedures were not followed in his treatment, *see id.* at 13-14, but this is irrelevant to the question of whether defendant was deliberately indifferent. *See Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (holding that "state departmental regulations do not establish a federal *constitutional* violation.") (emphasis in original text). He also disputes Dr. Chapnick's determination that his condition was non-emergent and did not warrant a medical hold. ECF No. 89 at 12. Plaintiff, however, is a layman and therefore unqualified to offer an opinion about whether his condition was so serious that the failure to issue a medical hold amounted to deliberate indifference.

Next, plaintiff argues that his transfer led to unnecessary consultations and a "ripple affect (sic) of failurs (sic)." *Id.* at 14. Assuming this is true, it does not establish that defendant was deliberately indifferent. As noted above, defendant has provided evidence that he was not responsible for the decision to transfer plaintiff. He also argues, persuasively in the court's view,

10

that he had no reason to believe that plaintiff's medical care at the transfer facility would be constitutionally inadequate. Deliberate indifference demands that the defendant "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Plaintiff has failed to offer evidence or plausible allegations[2] that defendant was aware, at the time of plaintiff's transfer, that a "ripple effect" of failures would lead to a substantial delay in surgery.

Finally, plaintiff reiterates his allegation that defendant transferred him in order to save costs. ECF No. 89 at 15. He alleges that he learned of this motive during a conversation with an unnamed grievance interviewer who told him that this was the underlying rationale for his transfer. *Id.* at 15-16. Unsupported allegations made in briefs are insufficient to defeat a summary judgment motion, however. *Stanley v. University of S. California*, 178 F.3d 1069, 1076 (9th Cir. 1999). Moreover, even if this allegation were true, it would not establish that plaintiff's condition warranted a medical hold or that defendant knew that plaintiff's transfer would result in inadequate care.

**IV.     Conclusion**

Accordingly, it is recommended that defendant's motion for summary judgment (ECF No. 65) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

/////

/////

/////

---

[2] In his opposition, plaintiff does allege that defendant's failure "may it be training his staff or supervising led to a ripple affect (sic) of constitutional violation," but offers no elaboration as to the exact contours of the alleged "failure." ECF No. 89 at 16.

11

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 5, 2017.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE